```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

```
LARASHAI BURTON
a/k/a L.D. BURTON, 05-B-0664,

            Petitioner,

       -v-                                    09-CV-6065(MAT)
                                              ORDER
JAMES T. CONWAY, Superintendent
of the Attica Correctional Facility,

            Respondent.
```
_____

## I. Introduction

*Pro se* petitioner Larashai Burton ("petitioner") has brought a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Erie County Supreme Court of Assault in the First Degree (N.Y. Penal L. § 120.10(1)) and Gang Assault in the First Degree (N.Y. Penal L. § 120.07) following a bench trial before Justice Russell Buscaglia. Petitioner was sentenced to two concurrent, determinate terms of imprisonment of twenty years, followed by five years of post-release supervision.

## II. Factual Background and Procedural History

In the early morning hours of April 11, 2004, Buffalo Police Officer John Williams ("Williams") was on routine patrol in the area of Elmwood and Allen Streets, where he saw a man writing down the license plate number of a maroon vehicle. Upon further examination, Williams saw David Brown ("the victim"), lying in the street near the maroon car, apparently unconscious. Williams also

observed petitioner and three other men standing around the car. When he approached the group, petitioner told Williams that he and one of the other men had walked out of the restaurant at the corner ("Jim's Steakout") and discovered the victim lying behind the car. Williams called for backup and all four suspects were arrested. Trial Tr. Vol. II at 26, 40, 46, 49, 52, 99, 105.

The victim was taken to Erie County Medical Center, where he was treated for life threatening head injuries caused by "some sort of a violent action." Trial Tr. Vol. III at 5, 8, 10-12, 19, 22, 31-33. Following the attack, the victim could not remember the incident or the events leading up to it. He did testify that, as a result of his injuries, he had to re-learn to walk, speak, feed himself, and tie his shoes while in the hospital. Trial Tr. Vol. I at 9-12, 17.

Employees of Jim's Steakout testified to what they had seen that evening outside of the restaurant. The restaurant's assistant manager, Kevin Bell, stated that he saw a man in an orange shirt stomp on the victim twice. Upon realizing that it was not a "run of the mill fight," he walked outside to take down the license plate number of the maroon vehicle. Likewise, manager Robert Eppolito testified that he saw a man with a "yellow-orange" shirt getting into the driver's seat of the maroon car. He also identified petitioner from a photo array as the driver in the yellow shirt.

Trial Tr. Vol. III at 45, 108-09, 116-123, 127, 133-34, 155, 180, 185-87, 218-19; Huntley/Wade Tr. 25, 39.

Petitioner's co-defendant Calvin Martin ("Martin") also testified for the prosecution at petitioner's trial.[1] He stated that he was with petitioner and two other men on the morning of April 11, 2004. They had left a bar at about 4:00a.m. and stopped at Jim's Steakout to eat. According to Martin, he was leaving the restaurant with his food when he was aggressively panhandled by the victim. The confrontation escalated when Martin's brother punched the victim after observing the victim reach for Martin's pocket. Martin testified to kicking the victim in the legs, and stated that he observed petitioner stomp petitioner twice in the head after he had fallen to the ground. Trial Tr. Vol. IV at 78-79. He further testified that petitioner had been the only member of the group that evening wearing an orange shirt. Id. at 86.

The trial court found petitioner guilty of first-degree assault and first-degree gang assault, and acquitted him on an additional charge of attempted murder in the second degree. Verdict Tr. 4-5. Petitioner was subsequently sentenced as a second violent felony offender to two concurrent, determinate prison terms of twenty years, with five years of post-release supervision. Sentencing Tr. 13-14.

---

[1] Martin pleaded guilty to Assault in the Second Degree and Forgery in the Third Degree and received a sentence of seven to fifteen years. In exchange for his plea agreement, petitioner provided testimony at the remaining three co-defendants' trial. Trial Tr. Vol. IV at 70.

3

Petitioner appealed his conviction to the Appellate Division, Fourth Department, on the grounds that the verdict was against the weight of the evidence and that the sentence was unduly harsh and excessive. See Resp't Exhibits ("Ex.") B. The Fourth Department unanimously affirmed the judgment of conviction. People v. Burton, 38 A.D.3d 1290 (4th Dept. 2007), amended on rearg., 41 A.D.3d 1325 (2007).

On January 30, 2007, petitioner filed a motion to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. L. § 440.10, alleging that Officer Williams knowingly committed perjury when he testified at trial and that Williams retrieved from the restaurant a videotape exonerating the petitioner. The state court denied that motion  Ex. C & D.

Petitioner then filed a timely petition for writ of habeas corpus with this Court, seeking relief on the sole ground of actual innocence. Petition ("Pet.") at 31-32 (Dkt. #1). For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

**III. Discussion**

    **A.   Standard of Review for Federal Habeas Corpus Petitions**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or

4

involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

**B.   Petitioner's Actual Innocence Claim**

Petitioner alleges that a videotape of activity from the surveillance cameras at Jim's Steakout exonerates him of the crimes for which he was convicted. Specifically, petitioner contends that the alleged videotape would show that petitioner was inside the restaurant at the time his co-defendant, Jermain Martin (Calvin's brother) initially assaulted the victim. Pet. at 32. The state supreme court rejected petitioner's claim, holding that,

> A review of the defendant's motion and supporting affidavit reveals that the defendant's assertions of perjury are bereft of any memorialized documentation or sworn statements that would support the defendant's allegations. To set aside a conviction on the ground urged by the defendant requires more than just a recitation of facts as the defendant perceives them to be.

Memorandum and Order, Supreme Court, Erie County (Buscaglia, A.J.), Ind. No,. 04-0711-001, dated 7/28/2008 at 2 (Ex. C) (citing People v. Wells, 265 A.D.2d 589 (2nd Dept. 1999); People v. Ford, 46 N.Y.2d 1021 (1979).

The Supreme Court has yet to resolve the question of whether a freestanding claim of actual innocence may serve as a basis of

5

habeas relief. It first faced the issue in the context of a habeas death penalty case. See Herrera v. Collins, 506 U.S. 390, 400 (1993). While acknowledging that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings," the Supreme Court refused to rule out that possibility. Herrera, 506 U.S. at 400. Instead, the Supreme Court assumed-"for the sake of argument"-that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." Id. at 417. The Supreme Court then found that petitioner Herrera's proffer of evidence did not meet the hypothetical threshold necessary to succeed on a claim of actual innocence. Id.

Thirteen years later, the case of House v. Bell, 547 U.S. 518, 554-555 (2006), presented the Supreme Court with another invitation to answer the question left open in Herrera regarding the viability of freestanding actual innocence claims in the habeas context. As in Herrera, the Supreme Court declined to answer the question but proceeded to analyze the claim assuming arguendo that a cognizable claim existed. Id. at 555.

"Following the strictures of the Second Circuit and the majority of courts in the Circuit, this Court assumes that a freestanding actual innocence claim does not constitute a cognizable ground for habeas relief and denies this petition." Cole v. Walsh, No. 05-CV-736 (SLT)(SMG), 2009 WL 3124771, *5 & n.4 (E.D.N.Y. Sept. 29, 2009) (citing, *inter alia*, Arce v. Commissioner of Corr. Servs., 2007 WL 2071713, at *4 (E.D.N.Y. July 17, 2007) ("Courts in this Circuit have repeatedly held that claims of innocence without reliance on constitutional infirmities in the trial do not present a ground for federal habeas corpus relief."); United States v. Quinones, 313 F.3d 49, 68 n.16 (2d Cir. 2002) ("[T]he [Supreme] Court expressly stated in Herrera that a claim of 'actual innocence' is not itself a constitutional claim.") (internal citation omitted); Greene v. Walker, No. 98-2149, 1999 WL 1489805, at *1 (2d Cir. Dec. 29, 1999) (summary order) (holding that a claim of actual innocence, standing alone, "fails to demonstrate a constitutional defect that would undermine the underlying conviction"). However, "even assuming such a right exists, and further assuming that it exists in the non-capital context, the Court concludes that petitioner does not satisfy whatever burden a hypothetical freestanding innocence claim would require." Cole, 2009 WL 3124771 at *5 (citing Herrera, 506 U.S. at 417 (describing the threshold for any hypothetical freestanding innocence claim as "extraordinarily high")).

7

In Schlup v. Delo, 513 U.S. 298 (1995), the Supreme Court established that actual innocence may serve as a "gateway" claim to excuse a procedural bar to reviewing underlying, procedurally defaulted constitutional claims if the petitioner can show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327. In House v. Bell, supra, the Supreme Court opined that whatever the standard was, it "requir[ed] more convincing proof of innocence than Schlup." Bell, 547 U.S. at 555. It stands to reason, then, that a habeas petitioner presenting an actual innocence claim as a basis for habeas relief must establish proof more indicative of innocence than would be required by Schlup if that petitioner were trying to overcome a procedural bar with a "gateway" actual innocence claim. E.g., Cole, 2009 WL 3124771 at *6.

In the instant case, the Court finds that petitioner's claim "does not satisfy the lower Schlup standard and, thus, he necessarily falls short of the threshold implied in Herrera." Cole, 2009 WL 3124771 at *6. Under Schlup, the first part of the analysis is "whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record." Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004). Once the habeas court determines that the new evidence is reliable, "Schlup unequivocally requires that reviewing courts consider a petitioner's claim in light of the evidence in

8

the record as a whole, including evidence that might have been inadmissible at trial[.]" Menefee, 391 F.3d at 162.  Thus, order to establish actual innocence under Schlup, the reviewing court must find, in light of all the evidence, that it is  "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327.

Following a review of the record, it appears that the alleged videotape was part of petitioner's file from the inception of the prosecution. At the very least, the tape was made available for the defense to inspect and/or copy as a result of the discovery and Brady requests made by defense counsel. See Answering Aff. of Daniel M. Killelea, No. 00711-2004, dated 7/20/2004. Significantly, the videotape was not used by the defense, nor was it referred to at any point in petitioner's trial.  Furthermore, by petitioner's own account, petitioner was aware of videotape and "informed [Officer Williams] in the patrol car that the tape would show that [petitioner] was not outside at the time the victim was attacked[.]" Pet'r 440.10 Mot. dated 1/30/2007 at 2. Given that petitioner knew of this supposed exculpatory evidence at the time of his arrest, it cannot be said to be "new reliable evidence" under Schlup. 513 U.S. at 324.

Petitioner implores the Court to take "judicial notice" of the videotape that allegedly contains exculpatory footage, speculating that it would show that he was in the restaurant while the victim

9

was being assaulted. Assuming, *arguendo*, the videotape did show that petitioner was inside the restaurant when the assault began, nothing prevented the trial court (the finder of fact in this case) from concluding that petitioner participated on the assault after Jermain Martin instigated the attack. Petitioner was identified as one of the perpetrators that stomped the victim by two witnesses and a co-defendant, and partially identified by two other witnesses doing the same. One of the witnesses, Kevin Bell, saw petitioner get into the driver's seat of the maroon car and tell the other men to hurry up, and "we'll just back over him." He was with the three other men who were seen attacking the victim, and was detained by police when he was observed standing next to the victim, who was lying on the ground. See Trial Tr. Vol. II at 53-55, Vol. III at 45, 78-79, 86, 108-09, 116-123, 127, 133-34, 180, 185-87, 218-19. Any evidentiary value from the alleged footage contained on the security tape is therefore "overwhelmed by the weight of other evidence that it is insufficient to raise a question as to a petitioner's factual innocence." Menefee, 391 F.3d at 162. Because petitioner's claim fails to satisfy the lower "gateway" standard set forth in Schlup, he "necessarily falls short of the threshold implied in Herrera. Cole, 2009 WL 3124771 at *6.

In sum, even assuming petitioner has stated a cognizable claim of "actual innocence" based on newly-discovered evidence, he has not demonstrated that the state court's rejection of his claim was

contrary to or an unreasonable application of clearly established Supreme Court precedent. Accordingly, the habeas petition is denied.

## IV. Conclusion

For the reasons stated above, Larashai Burton's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Petitioner has failed to make a "substantial showing of a denial of a constitutional right", 28 U.S.C. § 2253 (c)(2), the court declines the issue of certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

                                           S/Michael A. Telesca
                               _____
                                         MICHAEL A. TELESCA
                                United States District Judge

Dated:    March 7, 2011
          Rochester, New York